## SALMON & COWIN, Inc., v. NATIONAL LABOR RELATIONS BOARD.

## NATIONAL LABOR RELATIONS BOARD v. SALMON & COWIN, Inc., et al.

### No. 11138.

Circuit Court of Appeals, Fifth Circuit.

April 30, 1945.

Rehearing Denied June 1, 1945.

Horace C. Wilkinson and Borden Burr, both of Birmingham, Ala., for petitioner.

Alvin J. Rockwell, General Counsel, National Labor Relations Board, and Malcolm F. Halliday, Associate General Counsel, National Labor Relations Board, both of Washington, D. C., and Paul E. Kuelthau, Regional Attorney, National Labor Relations Board, of Atlanta, Ga., respondents.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

Salmon and Cowin, Inc., hereinafter called "Salmon", and Mine & Contractors

Supply Company, Inc., hereinafter called "Supply", were ordered by the National Labor Relations Board, hereinafter called "Board", to cease and desist from discouraging membership in, and interfering with their employees in relation to, labor organizations, and Salmon was ordered to reinstate and make whole one J. P. Milam, found to have been discriminatorily discharged. Salmon is here, as petitioner, complaining not of the cease and desist order but of the orders as to Milam, and seeking to set them aside. The Board is here petitioning for enforcement in full of its orders against both Salmon and Supply.

As no opposition is made by either of the companies to enforcement of the cease and desist portions of the order, the petition for enforcement of those portions will be granted without discussion or consideration of the points raised by the Board in connection with them.

As to the affirmative order requiring reinstatement of Milam and making him whole for any loss of pay he may have suffered by reason of the discrimination, Salmon vigorously contests it, and the findings on which it rests, as based on fraud and perjury so obvious and so gross as to completely destroy both findings and order. In the alternative, it urges upon us (1) that it ought not to be required to reinstate Milam, because it has, since his discharge, discovered that he had a hernia, and (2) that, because the job on which he was working would have been soon thereafter closed out, there is no basis for making him any substantial allowance as for pay lost.

While Salmon's prime defense, "If the jurisdiction of the National Labor Relations Board, to decide whether or not Milam was discharged for union activity, was invoked by a fraudulent averment or fraudulent charge, and Milam perjured himself to support the fraudulent charge petitioner is entitled to relief", is based on an undeniably correct legal proposition, an insurmountable defect in the way of it is that the determination of the questions of fact which underlie the proposition, that Milam had made a fraudulent averment or charge, and perjured himself to support it, is confided to the Board, and the Board, upon consideration of Milam's testimony and of that in controversion, has found that the charge was truly made and truly sustained.

Salmon's brief, with its 17 categorical charges of false swearing against Milam and its support of these charges by references to the controverting proof, and to the almost complete lack of corroboration of Milam's statements, does go far, in the light of the admitted fact that Milam did advise the men that they should not work Saturday unless paid Friday, and that this brought on his discharge, to show that Milam's testimony that he was discharged for unionism was unworthy of belief, and the Board ought not to have credited his testimony. But, having failed to convince the Board, with whom alone convincing counted, that Milam was a fraud doer and a perjurer, Salmon's efforts to convince have no office here. Under the statute, we must leave questions of credibility to the Board, just as we leave them in jury cases to the jury, we must take the facts as Board and jury have found them. Since this is so, Salmon's very argument that Milam's testimony has covered, though falsely, every material point, defeats its petition for relief, for it affirms that there is positive evidence accredited by the Board on each material point.

As to the alternative position that discovery of the hernia is a ground for denying either reinstatement or back pay, we think Salmon stands no better. The Board has made it clear that "its order is not intended to prevent or interfere with the normal exercise by the respondent of its right to discharge its employees for any legitimate cause, and that if, upon Milam's reinstatement, the respondent finds that his hernia renders him unfit for work, it may terminate his employment".

In Agwilines, Inc. v. National Labor Relations Board, 5 Cir., 87 F.2d 146, 147, and in Waterman S. S. Corporation v. National Labor Relations Board, 5 Cir., 119 F.2d 760, a contempt proceeding involving the ascertainment of back payments necessary to make employees whole, we dealt with the purpose and effect of the "make whole" provisions of the statute. We declared that the requirement in the Board's order to make whole the men who were illegally discharged was not made to vindicate the private rights of the men, but the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. In the Waterman case, supra, we said, 119 F.2d at page 763: "Remembering that the object of the back-pay order is to discourage discharges of employees contrary to the Act, we hold that an employee so discharged takes a peculiar status. But by the words of the Act, Section 2(3), he is still an employee. The Board has a very

broad discretion in vindicating the Act through him. * * * The employer risks a back-pay order as a part of the consequences. He cannot escape it by selling the ship, or by any voluntary abolition of the particular job."

As to Salmon's position that Milam would have earned very little because the job he was on was playing out, this is a matter which will properly come up not when compliance is being resisted but when it is being accorded, and upon whether it is properly and sufficiently accorded. We think it proper to say, though, as we did in Waterman's case, that while a real cessation of activity, a real shutting down, which, not discriminatorily but in like case with others employed, left Milam out of a job, would be proper to take into consideration in determining the amount which Milam "normally would have earned as wages", this must be real, not pretended, and it must not be motivated by, or attended with, discrimination against Milam. Salmon's petition is denied. The Board's petition is granted.